**Henry WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0176–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 24, 1985.

William W. Vance, Bryan, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Todd Jermstad, Brazos County Asst. Dist. Atty., Bryan, for appellee.

Before EVANS, C.J., and LEVY and COHEN, JJ.

## OPINION

COHEN, Justice.

A jury convicted appellant of burglary with intent to commit sexual assault, found an enhancement paragraph "true," and assessed punishment of 75 years imprisonment. Appellant asserts four grounds of error on appeal.

During the night of August 2–3, 1984, G.B. was alone in her trailer house in Brazos County. The windows were open, but the doors were locked. After going to bed at about 2 a.m., G.B. awoke and saw a man crouched in her bedroom, wearing only underwear. He stood up, removed his underwear, and began to pull on the bed sheet. G.B. pretended to be asleep, and the intruder left the bedroom. While he was gone, G.B. picked up a baseball bat that was next to the bed, put on a robe, and took a wallet from the trousers that the intruder had left on the floor. She then tried to leave, but the man approached her, and she turned on the hall light. After she turned the light on and while he was approaching, the man held his hands up, as if to hide his face. He then pushed her against the wall and turned the light off. She turned the light back on, and the man went back into the bedroom for his clothes. G.B. ran to a neighbor's house with the wallet, and the intruder left, leaving behind his underwear. The neighbors called the police.

After the police arrived, G.B. discovered that her living room curtains, which had been open when she went to bed, were closed, that the light bulb in her porch light had been unscrewed, and that a window screen had been removed.

A few days later, G.B. identified appellant by photograph as the intruder. After appellant was arrested, police obtained a warrant to seize samples of his blood, saliva, and hair. The characteristics of these samples were compared with the characteristics of the hair and seminal stains found in the intruder's underwear. Expert testimony on the results of these tests was introduced by the State at trial over appellant's objection.

Appellant contends that the evidence was insufficient to prove that he intended to commit sexual assault. He relies on *Walls v. State*, 299 S.W.2d 953 (Tex.Crim.App. 1957), and *Hays v. State*, 86 Tex.Crim. 469, 217 S.W. 938 (1920).

In *Walls*, the complainant was in her store at night when the defendant entered "with his pants open and his privates exposed, walked to a point approximately six feet from where the prosecutrix was seated watching television, apparently saw prosecutrix' companion ..., said 'Oh' and left the store." 299 S.W.2d at 953. The court held that this was insufficient evidence of intent to commit rape.

In *Hays*, the complainant awoke one night to find the defendant, a man staying in her house, bending over her and holding her wrist. He identified himself, whereupon she jerked away, and he ran from the room. The court held that this was insufficient evidence of intent to commit rape, because "it appears that he did not endeavor to disguise or conceal his identity, or in any way to use force after Mrs. Butterfield's actions and words at the time she awoke...." 86 Tex.Crim. at 469, 217 S.W. at 938.

In the following cases, the evidence was sufficient to show an intent to commit sexual assault: *Denison v. State*, 651 S.W.2d 754 (Tex.Crim.App.1983) (defendant was masturbating and told complainant that he wanted to have sexual intercourse with her); *Ford v. State*, 632 S.W.2d 151 (Tex.Crim.App.1982) (completely nude defendant pushed complainant to sofa and threw himself on top of her); *Prescott v. State*, 610 S.W.2d 760 (Tex.Crim.App.1981) (defendant held a knife to complainant's neck, told her that he wanted to have sexual intercourse with her, and attempted to pull off her clothes).

The facts of the instant case fall between the extremes presented by the above cases. In *Walls* and *Hays*, no force was exerted by the defendants. In *Hays*, the defendant was apparently clothed, and in *Walls*, the defendant was only partially exposed. In the cases where the evidence of intent was held to be sufficient, the defendant verbally and physically expressed his intent. In the instant case, appellant used some force against the complainant, he apparently attempted to conceal his identity, and he was completely nude. Unlike the facts in *Hays* and *Walls*, appellant had no legitimate reason or excuse for entering the complainant's premises. The presence of semen on appellant's underwear was a fact consistent with the sexual arousal of one intending to rape.

When the sufficiency of the evidence is challenged, the evidence must be viewed in the light most favorable to the verdict. *Garza v. State*, 622 S.W.2d 85, 90 (Tex.Crim.App.1980) (op. on reh'g). Felonious intent is a fact issue that may be inferred from the events that occurred while the burglary was in progress. *Baker v. State*, 625 S.W.2d 840, 843 (Tex.App.—Amarillo 1981, no pet.); *Phillips v. State*, 654 S.W.2d 846, 849 (Tex.App.—Dallas 1983, no pet.). Viewing the record in light of these rules and the above cases, we hold that the evidence sufficiently proved intent to commit rape. The first ground of error is overruled.

The appellant next attacks the search warrant, claiming that the affidavit supporting it failed to establish probable cause that the items to be seized—samples of his blood, hair, and saliva—constituted evidence of the offense.

Tex.Code Crim.P.Ann. art. 18.01(c) (Vernon Supp.1985) provides, in pertinent part, as follows:

A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit ... sets forth sufficient facts to establish probable cause ... (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense *or evidence that a particular person committed that offense....*

(Emphasis added.)

In evaluating the sufficiency of an affidavit to support a search warrant, the "affidavit should be interpreted in a common sense and realistic manner[,] and the magistrate is entitled to draw reasonable inferences from the facts contained therein." *Rumsey v. State*, 675 S.W.2d 517, 521 (Tex. Crim.App.1984). Where items to be seized are "mere evidence," police purposes must be considered in evaluating probable cause. *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *Drousche v. State*, 651 S.W.2d 883, 886 (Tex.App.—Austin 1983, pet. ref'd).

Appellant's only argument is that the affidavit did not establish that the blood, hair, and saliva samples constituted evidence of the offense. Such a showing is not required, however, if the affidavit establishes probable cause that the items constitute "evidence that a particular person committed that offense." Tex.Code Crim. P.Ann. art. 18.01(c). The affidavit here set forth in detail the facts surrounding the commission of the offense, G.B.'s identification of appellant as the intruder, and the discovery and seizure of the intruder's underwear from G.B.'s bedroom. The magistrate could reasonably infer that the samples were requested in an effort to link appellant to the abandoned underwear, thereby showing that the appellant was the intruder. Ground of error two is overruled.

Appellant next complains that the search warrant was defective, because the magistrate who signed it was not shown to be a magistrate authorized to issue evidentiary warrants under Tex.Code Crim.P.Ann. art. 18.01(c). The signature on the warrant is illegible. At the suppression hearing and at the trial, Officer Crenshaw, who obtained the warrant, testified that the magistrate was Arthur Lesher, a visiting judge substituting for District Court Judge McDonald. No objection to the magistrate's

authority to issue the warrant was raised in the trial court.

Nothing is presented for review where there was no objection made in the trial court on the same basis as the ground of error on appeal. *Rovinsky v. State*, 605 S.W.2d 578, 580 (Tex.Crim.App.1980). In *White v. State*, 486 S.W.2d 377 (Tex.Crim. App.1972), the defendant alleged on appeal that the record did not demonstrate that the warrant was issued by a duly authorized magistrate. The ground of error was overruled, because the warrant reflected the signature of a justice of the peace and because "[n]o objection by appellant is found in either the motion to suppress or at the trial proceedings. Also, when one of the police officers testified that he took the search warrant to 'Judge McKenna' to be signed, no objection was made." *Id.* at 380.

■ Because appellant failed to complain in the trial court of the magistrate's authority to issue the warrant, the error, if any, was waived. The third ground of error is overruled.

Appellant finally complains of the trial court's denial of his motion to quash the jury panel. Appellant, who is black, contends that his right to equal protection of the law was violated by the systematic exclusion of blacks from the jury caused by the State's use of its peremptory challenges.

The prevailing rule was stated in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), where the Supreme Court held that the prosecution's use of peremptory challenges to exclude blacks from a jury violated the Constitution only if it is shown that the prosecution has excluded blacks "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be...." *Id.* at 223, 85 S.Ct. at 837. *Accord Ridley v. State*, 475 S.W.2d 769 (Tex.Crim.App.1972).

■ There is no evidence before us that the prosecution has excluded blacks from juries under all circumstances. Appellant relies only on the fact that the State in this case exercised its peremptory challenges to strike the only four blacks on the venire. He claims that this fact alone is sufficient to show a violation of equal protection of the law because of recent actions of the United States Supreme Court in *Perry v. Louisiana*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983), and *Batson v. Kentucky*, —— U.S. ——, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). In *Perry*, the Supreme Court denied certiorari, and in *Batson*, it granted certiorari. Neither act overrules existing precedents. Until the Supreme Court announces a new standard, the rule in *Swain* prevails. The fourth ground of error is overruled.

The judgment of the trial court is affirmed.

LEVY, Justice, concurring.

Although I concur with the Court in the disposition of this appeal, it seems appropriate to restate my misgivings about too perfunctory a treatment of appellant's fourth ground of error. Therein, he asserts a violation of his Equal Protection rights when the State exercised its peremptory challenges to exclude all blacks from the jury.

As stated in my concurring opinion in *Metters v. State*, 695 S.W.2d 88, 90–91 (Tex.App.—Houston [1st Dist.] 1985, no pet.), "[w]here the prosecutor strikes all members of the venire who are members of a recognizable ethnic group, logic would certainly allow, if not require, the presumption to arise that such striking amounts to systematic exclusion of that group, even if on an *ad hoc* basis, and thereby shift the burden to the prosecutor, upon timely objection, to justify his action on non-racial grounds or have the jury panel quashed." *Id.* at 91. I remain dissatisfied with the subordinate position to which the Equal Protection Clause has been relegated where it conflicts with the procedural right of the prosecutor to peremptorily strike members of the venire who are black.

But, as the Court says, "[u]ntil the Supreme Court announces a new standard,

the rule in *Swain* prevails." Appellant has failed to meet his difficult, if not insurmountable, burden on the issue of systematic exclusion on racial grounds, and therefore *Swain* requires my agreement that appellant's fourth ground must be overruled.