

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00381-CR

**RUBEN EARL WALKER,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

**From the 82nd District Court
Falls County, Texas
Trial Court No. 9442**

## MEMORANDUM OPINION

In one issue, appellant, Ruben Walker, contends that his conviction should be reversed because the trial court allowed a law-enforcement officer to testify concerning the officer's use of a field test and the results therefrom in violation of Texas Rule of Evidence 702.  *See* TEX. R. EVID. 702.  Because we conclude that error, if any, in the admission of the complained-of evidence was harmless, we affirm.

# I. BACKGROUND

Here, appellant was charged by indictment with one count of unlawful possession of a controlled substance—cocaine—in an amount less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). At the conclusion of trial, the jury found appellant guilty of the charged offense and assessed punishment at two years' incarceration in the State Jail Division of the Texas Department of Criminal Justice with a $2,500 fine. The trial court certified appellant's right of appeal, and this appeal followed.

# II. ANALYSIS

In his sole issue on appeal, appellant complains that the trial court abused its discretion in failing to have a gatekeeping hearing "on the use of a presumptive test to purportedly determine the presence of cocaine" and for admitting the testimony of a law-enforcement officer regarding the results from the field test.

The record reflects that appellant filed a motion to exclude the presumptive field drug test done by Joshua Tulloch, formerly a police officer for the City of Marlin. Appellant argued that the "drug test was not confirmed by any further lab testing, thus it is inadmissible under Texas law"; that the drug test is scientific in nature; and that "Officer Josh Tulloch is not qualified as an expert witness, thus any testimony regarding the presumptive field test should be excluded." Contrary to appellant's assertion, the trial court conducted a hearing on appellant's motion to exclude outside the presence of

the jury. At the conclusion of the hearing, the trial court denied appellant's motion to exclude.

With regard to the admission of evidence involving field tests, the Court of Criminal Appeals has stated the following:

> In ground number 6[,] appellant complains of the testimony of Officer Leonard that he conducted a field test on the substance taken from appellant, and that the result, according to the test directions and color chart, showed positive for cocaine. If this testimony was error it was rendered harmless when a qualified and expert chemist later testified that the substance was cocaine.

*Hicks v. State*, 545 S.W.2d 805, 809-10 (Tex. Crim. App. 1977), *overruled in part on other grounds by Eisenhauer v. State*, 678 S.W.2d 974 (Tex. Crim. App. 1984) (citing *White v. State*, 486 S.W.2d 377, 379 (Tex. Crim. App. 1972); *Boatright v. State*, 472 S.W.2d 765, 770 (Tex. Crim. App. 1971)).

In the instant case, Tulloch testified concerning his use of the presumptive field drug test, as well as the results from the test. Tulloch testified that, at the time of the traffic stop, appellant "was moving his hands a lot, and I could notice a white—a real deep white streak in his finger." Based on his training and experience, Tulloch believed the "deep white streak" to be cocaine. Tulloch also found in the cup-holder of the vehicle "small crumbs" of an "off-white/white substance" that he believed to be cocaine. Thereafter, Tulloch conducted a field drug test on appellant's finger and on the white crumbs found in the cup-holder of appellant's vehicle. Both tests turned blue, thus indicating the presence of cocaine. *See, e.g., Smith v. State*, 874 S.W.2d 720, 721-22 (Tex.

App.—Houston [1st Dist.] 1994, pet. ref'd) ("We believe that Malloy's testimony about the performance and results of a field test is expert testimony.  As such, in accordance with *Curtis*, he could not testify that the substance was cocaine.  However, he could testify about the procedure he used in performing the field test, and about the physical results of the test. . . .  Thus, although we give no probative value to Malloy's conclusion that because the cotton turned blue, cocaine was present, we do assign value to the remainder of his testimony.  Further, unlike *Curtis*, the State had an expert chemist testify.  'If this testimony (the field officer's) was error, it was rendered harmless when a qualified and expert chemist later testified that the substance was cocaine.'" (quoting *Hicks*, 545 S.W.2d at 810)).  Moreover, James Michael Milam, a forensic scientist for the Texas Department of Public Safety Crime Lab, testified that he tested the white crumbs found in the cup-holder of appellant's vehicle and determined that the substance was 0.01 grams of cocaine.

Assuming without deciding that it was error to admit the testimony of Tulloch regarding the use of and results from the field test, we cannot say that appellant was harmed.  Because the purported erroneous admission of drug-test results is non-constitutional error, we apply Texas Rule of Appellate Procedure 44.2(b) to conduct our harm analysis.  *See* TEX. R. APP. P. 44.2(b); *see Potier v. State*, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002).  Under Rule 44.2(b), we disregard the error unless it affected appellant's substantial rights.  *See* TEX. R. APP. P. 44.2(b).  A substantial right is affected

when the error had a substantial, injurious effect or influence on the outcome. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Like *Hicks*, the State offered the testimony of Milam, an expert, who confirmed that the crumbs found in the cup-holder of the vehicle were indeed 0.01 grams of cocaine. *See* 545 S.W.2d at 809-10; *see also White*, 486 S.W.2d at 379; *Boatright*, 472 S.W.2d at 770. And as noted earlier, where a qualified, expert witness testifies at trial that a substance is an illegal controlled substance, any error in the admission of testimony from an officer regarding the results of a field drug test is rendered harmless.[1] *See Hicks*, 545 S.W.3d at 809-10; *see also White*, 486 S.W.2d at 379; *Boatright*, 472 S.W.2d at 770. Therefore, because Milam testified that the complained-of substances were cocaine, we cannot say that appellant was harmed by the complained-of evidence. Accordingly, we overrule appellant's sole issue on appeal.

### III. CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

---

[1] Appellant did not challenge the qualifications of Milam in the trial court or on appeal.

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed September 28, 2016
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment of conviction. A separate opinion will not issue. Chief Justice Gray does, however, provide the following comment: Two swab tests, aka field tests, were made by Sergeant Tulloch. One was of Walker's hand, the other was of a cup holder. Both test gave a positive indication for the presence of cocaine; the swab turned blue. This is a presumptive test that indicates the presence of a chemical-in this instance cocaine. The cup holder was seized and sent to the lab where an expert chemist, who testified at trial, tested the substance and by means of scientific testing confirmed the white powder in the cup holder to be cocaine. For obvious reasons Walker's hand was not seized and so the substance thereon was not tested in a lab by an expert. It seems to be well established that the presumptive test, alone, is inadequate to prove the substance at issue is contraband. But it also seems to be equally well established that the law enforcement official testifying about the field testing procedure and the results is admissible for purposes other than to prove the substance being tested is contraband. In administering this presumptive field test there is no expertise required. You take the swab from the test kit, wipe it across the item to be tested, and it gives a certain reaction by way of a color change, in this case it turned blue, if a certain chemical is present. There is no more expertise to administer this test than there is an off the shelf pregnancy test which can be administered by anyone in the privacy of their home or even in a public restroom. Walker's complaint is that the Sergeant should not have been allowed to testify about the swab test applied to Walker's hand without first conducting a 702 expert gatekeeping hearing to test the reliability of the officer's expert testimony. I would hold that this type test, that requires no particular expertise to administer, does not require any type of gatekeeper hearing by the trial court under Rule 702. Therefore, I would overrule Walker's issue and affirm the conviction without getting to the harm analysis. In this case, the fact that an expert subsequently confirmed the substance in the cup holder was cocaine is irrelevant to whether the Sergeant should have been allowed to testify about the swab test of Walker's hand. Walker was not convicted for the white powder that was on his hand that presumptively tested positive as cocaine. No expert ever tested or testified that the substance on Walker's hand was cocaine. But the admission of the testimony of the Sergeant that he observed white powder on Walker's

hand and the cup holder, that both the hand and the cup holder presumptively tested positive for cocaine, and joined with the expert testimony that the white powder in the cup holder was cocaine may have been damning evidence to show that it was Walker's cocaine. Nevertheless, the admission of the testimony about the procedure and presumptive result of the swab test did not require a 702 expert gatekeeper hearing by the trial court before that evidence was admitted.)

